UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN E. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:    4:15-CV-00714-ERW |
| | ) | |
| ASPLUNDH CONSTRUCTION CORP. | ) | |
| and ANTHONY MICHAEL ROGERS, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE "REPTILE THEORY" ARGUMENT OR EVIDENCE

COME NOW Defendants Anthony Rogers (hereinafter "Rogers") and Asplundh Construction Corp. (hereinafter "Asplundh"), by and through undersigned counsel, and submit their Motion *in Limine* and incorporated suggestions in support, to preclude Plaintiff's Counsel from presenting "Reptile Theory" argument or evidence at trial:

### I.    Introduction

This case concerns a December 3, 2007 motor vehicle accident between Plaintiff Jackson and Defendant Anthony Rogers. Doc #3. At the time of the accident Defendant Rogers was acting in his capacity and an employee of Defendant Asplundh and driving an Asplundh vehicle. Doc #11. From discovery depositions and discussion with Plaintiff's Counsel it is apparent Plaintiff's counsel intends to present a case to the jury based on an appeal to the jury's sympathy regardless of the facts, evidence, or the relevant legal standard.

Plaintiff's Counsel will attempt to present "Reptile Theory" evidence and argument at trial based on the popular 2009 manual created for plaintiff's attorneys. In using the "Reptile Theory" counsel seeks to inflame the jury. Additionally, the "Reptile Theory" is also an impermissible "Golden Rule" argument because it attempts to appeal to jurors' concerns about

{S0458954}                                      1

their own safety and the safety of the community, rather than the evidence regarding plaintiff. "Golden Rule" arguments ask a jury not to decide according to the evidence but according to how its members might wish to be treated. "Reptile Theory" purports to require that all employers must make the "safest choice possible" in all circumstances, regardless of any actual standard of care. Because "Reptile Theory" arguments are improper, this Court should prohibit Plaintiff from presenting any such irrelevant and prejudicial evidence or argument. Defendants make this argument pursuant to Federal Rules of Evidence 104, 401, 402, and 403.

**II.     This Court should prohibit Plaintiff from presenting any evidence or argument base on the irrelevant and prejudicial "Reptile Theory."**

   **A.  Introduction to "Reptile Theory."**

   In 2009 David Ball and Don C. Keenan co-authored *Reptile: The 2009 Manual of the Plaintiff's Revolution*. Reptile is based on a concept by neuroscientist Paul MacLean that people are driven by the "triune" or "reptilian" portion of their brain. This portion of the brain is identified as "reptilian" because its function is identical to the brain of reptiles in that it houses basic life functions such as breathing, balance, hunger, and the fundamental life force: survival. The survival instincts extends beyond an individual's survival and has the larger purpose of allowing for survival of the human species.

   Ball and Keenan explain that the goal of a plaintiff's attorney at trial is to get the jurors' brains into "reptilian" survival mode. (David Marshall, *Litigating Reptiles*, 47 *attached hereto as* Exhibit A). The major axiom of "Reptile Theory" is that when the Reptile (short for reptilian portion of the brain) sees a survival danger, she protects her genes by impelling the juror to protect herself and the community. The authors believe every case must have an "umbrella rule" which is the widest general rule violated by defendant and to which will trigger every juror's

reptilian survival instincts. *Id*. at 48. The goal of the umbrella rule is to avoid expert testimony regarding the actual standard of care and to lead the jury to the erroneous conclusion that there is only one standard of care "the safest." Further, the authors encourage plaintiff's lawyers to make the theme of each case about "harms and losses" and to stress that the proper measure of damages is the maximum "harms and losses" the defendant could have cause, rather than the actual damages in the case. *Id*.

The classic example of an umbrella rule provided by the authors is that "_____ is not allowed to needlessly endanger the public." *Id*. The plaintiff's attorney can then fill in the blank with whatever best suits the case –a company, doctor, truck driver etc. After establishing the "umbrella rule," the next step is to create case-specific rules directly applicable to the conduct attributed to the defendant. *Id*.  In a commercial trucking accident like the present case, plaintiff may attempt to create a case-specific rule, as Plaintiff's Counsel has attempted here, that the truck driver must adhere to the federal motor carrier safety regulations, or he needlessly endangers the motoring public. *Id*. From there the authors recommend having plaintiff's expert analogize the case-specific rules to demonstrate how violations can affect everyone in the community, including members of the jury. *Id*. Plaintiff's counsel then attempts to elicit the same admissions and analogies from defense experts. *Id*. Ultimately, the goal of plaintiff's counsel is to convince jurors to ignore the actual standards of care articulated in the jury instructions and instead determine liability on whether defendants followed the "umbrella rule" and followed the absolute safest course of conduct. *Id*.

**B. Plaintiff's Counsel intends to use "Reptile Theory" to improperly raise questions of community protection.**

Plaintiff's counsel has, throughout the deposition process, presented witnesses with questions focused on protecting the community rather than merely eliciting facts.  Questions such as "Asplundh knew that the safety rules of FMCSR concern the **safety of the public who use the highways**?" (August 20, 2014 Deposition of Jarrod Wachter, 115:7-9 attached hereto as Exhibit B, *emphasis added*) or "You agree that Ms. Jackson should be able to rely upon Asplundh to **provide safe drivers for the vehicles that are on commercial roads in St. Louis**? (Ex. B, at 33:18-20, emphasis added) or "…you would want to make sure that they act **as safely as possible so as to not expose themselves, the equipment, or anyone in the public to injury**?" (November 7, 2012 Deposition of David Totsch, 71:10-12 attached hereto as Exhibit C), and **"[a]nd you agree from an employee of a corporation like Asplundh who's operating a commercial vehicle with the policy that safety is first**?" (April 7, 2016 Deposition of Francis Oldham, 129:25-130:2, attached hereto as Exhibit D, emphasis added) are asked not to determine facts relating to Plaintiff's case, but are designed to raise questions of community protection beyond the scope of this litigation, and to distract and confuse the jury from the actual standard of the case.

This case is about a single accident which occurred on December 3, 2006; it is not an indictment of Asplundh's or commercial trucking's role in society. Through this "Reptile Theory" line of questioning, Plaintiff's counsel tries to spread the aroma of fear in the community. This tactic is improper, focuses on irrelevant evidence, and is intended only to set up the jury as protector of the community and improperly personalize the case for the jury. Accordingly, this Court should grant Defendants' motion to preclude "Reptile Theory" argument or evidence.

### C. Plaintiff's Counsel intends to use Reptile Theory to improperly misdirect the jury on the proper standards of care.

Based on Plaintiff Counsel's questioning it appears that Plaintiff will attempt to present evidence at trial based on "Reptile Theory" which seeks to misdirect the jury's attention away from the facts of the case and the proper standards of care and instead focus the jury on what plaintiff's counsel will contend (with the benefit of hindsight) would have been the safest possible actions. Plaintiff's counsel has asked questions such as "[i]f he doesn't pull out and waits for that car, Miss Jackson's car, to pass, you certainly would have no criticisms for that?...[a]nd **that would have been the safest thing to do**?" (Ex. C, 93:23-94:8, *emphasis added*), or "[b]ut we certainly can agree that the **safe and prudent** thing for the driver to do in that circumstance would be to not pull out?" (Ex. C, 147:25-148:2, *emphasis added*), or "Do you agree it would be **safe and prudent** for Mr. Rogers to let Ms. Jackson pass?" (December 20, 2103 Deposition of Joel Hulsey, 95:12-13, attached hereto as Exhibit E, *emphasis added*), and "Do you agree with this statement: That **safe distance** is applied to pulling out in front of someone else giving the person behind you that you're pulling out in front of a **safe distance to stop**?" (Ex. D, 201:10-13, *emphasis added*).

The purpose of these questions is not to adduce facts about the case, but to misdirect the jury's attention away from the proper legal standard of care and instead direct the jury to determine Defendants' liability on whether, in hindsight, Defendants' conduct was the safest possible choice as opposed to the actual legal standard. This evidence and argument is irrelevant, improper, and seeks to confuse and mislead the jury. Accordingly, this Court should grant Defendants' motion in limine to preclude "Reptile Theory" argument or evidence.

### D. "Reptile Theory" is an impermissible "Golden Rule" argument.

A Golden Rule argument asks the jury to place itself in the defendant's position. See *Spray–Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir.1982), aff'd, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Such an argument is universally condemned because it encourages the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.*; *Dole v. USA Waste Servs. Inc.*, 100 F.3d 1384, 1388 (8th Cir.1996); *Lovett ex rel. Lovett v. Union Pac. R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000)

Golden Rule arguments are those that have the effect of asking the jurors how they would feel if placed in the Plaintiff's position and inviting the jurors to find liability based on subjective feelings about personal and community safety. Plaintiff counsel's statements during discovery regarding the concerns of the "public" and "commercial roads in St. Louis" appear to be the beginning of a "Reptile" trial strategy, based not the evidence, but on the juror's concerns about their own safety and the safety of the community. Accordingly, this Court should address any improper "Reptile Theory" argument or evidence at the outset of trial and grant Defendants' motion in limine to preclude any "Reptile Theory" argument or evidence.

**WHEREFORE**, Defendants respectfully request this Court grant their Motion in Limine to Preclude "Reptile Theory" Argument or Evidence and for such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

**FISHER PATTERSON SAYLER & SMITH**

*/s/ Lawrence L. Pratt*

Lawrence L. Pratt, #41324
Edward F. Reilly, #67658
1010 Market Street, Suite 1650
St. Louis, Missouri 63101
(314) 561-3675
(314) 571-6792/Facsimile
lpratt@fisherpatterson.com
ereilly@fisherpatterson.com

*Attorney for Defendants Asplundh Construction*
*Corp. and Anthony Michael Rogers*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed through the Court's electronic filing system on this 6th day of September, 2016, which will serve the following attorney(s) of record:

James T. Corrigan
**Onder, Shelton, O'Leary & Peterson, LLC**
110 East Lockwood, 2nd Floor
St. Louis, MO 63119
corrigan@onderlaw.com

*Attorneys for Plaintiff*

*/s/ Lawrence L. Pratt*